# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SARAH ROECKER,** | : | **Civil No. 3:24-CV-47** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

Until 2012, Sarah Roecker worked as an attorney, practicing law despite her emotional impairments. (Tr. 40, 55-56, 219-20). In January of 2021, Roecker applied for disabled widow's benefits under the Social Security Act, alleging an onset of disability nearly nine years earlier, in May of 2012. (Tr. 29). However, following a hearing, an Administrative Law Judge (ALJ) denied Roecker's application for benefits. (Tr. 29-41). Citing her activities of daily living, her treatment history, and the medical opinions of a number of experts, including an examining consulting source, Dr. Sari Fleischman, who found that Roecker experienced mild limitations in her ability to understand, remember, and carry out simple instructions, (Tr. 390), the ALJ concluded that Roecker retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; and which require no more than frequent interaction with supervisors and coworkers and no more than occasional interaction with members of the general public.

(Tr. 34).

Based upon this RFC determination, the ALJ found that Roecker could perform work in the national economy and denied this claim. (Tr. 40-41).

Roecker now challenges this aspect of the ALJ's residual functional capacity assessment based upon a single narrowly focused argument. According to Roecker: "THE COMMISSIONER ERRED AS A MATTER OF LAW BY IMPROPERLY EVALUATING THE MEDICAL OPINION OF THE CONSULTATIVE EXAMINER, [Dr. Fleischman] INCLUDING BY FAILING TO INCORPORATE LIMITATIONS FROM A MEDICAL OPINION THE ALJ FOUND TO BE PERSUASIVE." (Doc. 16 at 2, 8-15).

In considering this claim, we are mindful of two guiding legal tenets. First, as the Supreme Court has recently underscored, we employ a limited scope of review when considering Social Security appeals. Our task is simply to determine whether substantial evidence supports the ALJ's decision. On this score:

2

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Second, consistent with this deferential standard of review, when we are called upon to assess whether an ALJ has sufficiently articulated a rationale for the mental and emotional components of an RFC, we have recently been instructed that this aspect of an RFC is sufficient "as long as the ALJ offers a 'valid explanation'" for the mental and emotional limitations imposed upon a worker. Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it has been held that an ALJ offers a valid explanation for a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do

simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

Thus, Hess tells us that the legal sufficiency of an ALJ's mental RFC assessment should not be addressed in the abstract, through a mechanical process which requires adherence to certain terms of art. Instead, this analysis should be a pragmatic consideration grounded in the evidence presented at the disability hearing. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), and recognizing that a mental RFC is sufficient "as long as the ALJ offers a 'valid explanation,'" for the mental and emotional limitations imposed upon a worker, Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

On January 29, 2021, Sarah Roecker applied for disabled widow's benefits pursuant to the Social Security Act, alleging that she had become totally disabled beginning in May of 2012 due to depression, bi-polar disorder, and a personality disorder (Tr. 29, 32). Roecker was born in 1964 and was 48 years old at the time of

the alleged onset of her disability. She had prior employment as an attorney. (Tr. 40).

This appeal advances a specific, and narrowly framed, question, challenging the sufficiency of the ALJ's analysis of Roecker's emotional impairments and specifically argues that this analysis was deficient and infirm because the ALJ did not sufficiently reconcile the RFC, with the findings of a consultative expert, Dr. Fleischman. As we have noted, this issue cannot be addressed in the abstract, but should be evaluated in the context of the ALJ's articulated factual findings concerning Roecker's mental impairments and capabilities. In this case, the ALJ found at Step 2 of the sequential analysis which applies to Social Security appeals that Roecker had the following severe impairments: bipolar disorder and personality disorder. (Tr. 32). While the ALJ concluded that these emotional impairments were severe at Step 2, the ALJ also found that these impairments, singly and combined, did not meet any Social Security listing requirements. (Tr. 32-34).

On this score, the ALJ carefully assessed the severity of Roecker's emotional impairments, describing the degree of her impairment in the following terms:

> In understanding, remembering or applying information, the claimant has no limitation. In her function report, the claimant alleges difficulty with memory, but did not note any specific difficulty with understanding or following instructions (Exhibit 6E/6). The claimant indicated that she requires reminders to tend to her personal care needs, but does not need reminders to take medications (Exhibit 6E/3). She

indicated that she could generally follow both written and spoken instructions (Exhibit 6E/6). Treatment notes indicate that the claimant had normal recent and remote memory (Exhibit 11F/7). At the consultative examination, recent and remote memory skills were impaired due to emotional distress secondary to depression (Exhibit 5F/4). The claimant was able to remember three of three objects immediately, and two objects after a delay (Exhibit 5F/4). Intellectual functioning appeared to be in the average range with a general fund of information appropriate to experience (Exhibit 5F/4). There is no indication that she had any difficulty understanding her medical treatment. The overall record does not describe any serious, abnormal deficits in this area. The undersigned finds that the record, including the claimant's testimony at the hearing, does not support finding any limitation in this area.

In interacting with others, the claimant has a moderate limitation. In her function report, the claimant did not note any specific difficulty with getting along with others (Exhibit 6E/6). She indicated that she does not really socialize with others, and noted that she does not typically leave her home unless necessary (Exhibit 6E/5). She did not describe any difficulty getting along with authority figures (Exhibit 6E/6). At the hearing, the claimant testified that she typically has a depressed mood (Hearing Testimony). She noted that she could occasionally go grocery shopping on a good day, but explained that she otherwise relies on her daughter to shop (Hearing Testimony). She noted that she experiences occasional manic episodes, which include significant risk taking and impulse shopping (Hearing Testimony). Treatment notes indicate that the claimant had a normal mood and normal behavior (Exhibit 11F/8). At the consultative examination, the claimant's mood was dysthymic and her affect was dysphoric (Exhibit 5F/3-4). She was cooperative and her manner of relating was adequate (Exhibit 5F/3). There is no indication in the record that the claimant had any significant difficulty interacting with others. The record does not describe any serious abnormal interactions with doctors or medical staff. The undersigned finds that the record, including the claimant's testimony at the hearing, does not support finding any more than a moderate limitation in this area.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In her function report, the claimant alleges difficulty with concentration and completing tasks (Exhibit 6E/6). She noted that she typically does finish things that she starts (Exhibit 6E/6). At the hearing, the claimant testified that she experiences occasional manic episodes, and noted that she sometimes has hallucinations during these episodes (Hearing Testimony). She noted that she has difficulty keeping up with chores, and explained that the chores tend to pile up (Hearing Testimony). At the consultative examination, attention and concentration were impaired due to emotional distress secondary to bipolar disorder (Exhibit 5F/4). The claimant was able to count and complete simple calculations (Exhibit 5F/4). She was unable to perform serial sevens but was able to perform serial threes (Exhibit 5F/4). The overall record does not describe any serious, abnormal deficits in this area. The undersigned finds that the record, including the claimant's testimony at the hearing, does not support finding any more than a moderate limitation in this area.

As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant noted that she is sometimes lax with completing her personal care tasks, especially bathing and brushing her teeth (Exhibit 6E/2, Hearing Testimony). She noted that she could prepare simple meals and complete some light household chores when she is not experiencing excessive depression (Exhibit 6E/3). She indicated that she does not handle stress or changes in routine well (Exhibit 6E/7). The claimant testified that she does not take care of her personal hygiene well, and estimated that she bathes approximately once every seven to ten days, and does not brush her teeth often (Hearing Testimony). She also noted that she does not change her bed sheets on a regular basis (Hearing Testimony). She indicated that she could perform some light household chores, such as laundry and cleaning occasionally, but explained that she otherwise tends to let the chores pile up, and relies on her daughter to help her complete the chores (Hearing Testimony). At the consultative examination, the claimant was alert and oriented (Exhibit 5F/4). Thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia (Exhibit 5F/3).

(Tr. 32-33).

The ALJ then formulated the following RFC for Roecker:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; and which require no more than frequent interaction with supervisors and coworkers and no more than occasional interaction with members of the general public.

(Tr. 34).

This RFC assessment for Roecker rested upon a consideration of her treatment records, reported activities of daily living, and the medical opinion evidence, including the opinion of a consultative expert, Dr. Sari Fleischman. (Tr. 34-39). As the ALJ explained with respect to Roecker's treatment history:

> Treatment notes indicate that the claimant presented with regular and continuing complaints of depression (Exhibits 2F and 6F). At one appointment, the claimant reported that she had not changed her bed sheets since her husband died, approximately six months before the appointment (Exhibit 2F/5). At another appointment, the claimant reported participating in gardening (Exhibit 2F/7). She noted that she does not brush her teeth or bathe often, and estimated that she only showers approximately once per week (Exhibit 2F/7). However, the claimant did not consider herself to be depressed or suicidal, but did report feeling sad (Exhibit 2F/7). At times, the claimant reported not wanting to get out of bed (Exhibit 3F/7). Follow-up treatment records note that the claimant reported some improvement with her mood following medication adjustments (Exhibit 3F/6).

At one appointment, the claimant also reported experiencing some mania, including visual hallucinations (Exhibit 7F/34). She also reported excessive shopping online (Exhibit 7F/34). Subsequent treatment notes indicate that the claimant reported a fear of having manic episodes, and asked her doctor to adjust her medications (Exhibit 7F/25). The claimant reported some improvement with her ability to perform activities, including personal care tasks, and maintain a diet (Exhibit 7F/11). The claimant reported changing some of her medications, but indicated that this medication change caused an episode of syncope (Exhibit 9F/1). The record indicates that the claimant presented to the emergency room in June 2022 with slurred speech and difficulty walking (Exhibit 11F/5). On examination, the claimant was alert and oriented (Exhibit 11F/7). Her speech was clear and fluent, but was slow (Exhibit 11F/7). Recent and remote memory were normal (Exhibit 11F/7). The claimant had a normal mood and normal behavior (Exhibit 11F/8). Diagnostic testing from this time was generally within normal limits (Exhibit 11F/9-10). The claimant was admitted for observation but was discharged the following day, and it was noted that the claimant's symptoms were possibly due to a recent change in her psychiatric medications (Exhibit 11F/15-16). Upon discharge, neurological examination and psychiatric observations were normal (Exhibit 11F/16). At follow-up appointments, the claimant also reported experiencing some increased depression due to the medication changes (Exhibit 9F/2). She reported engaging in a new relationship, and noted that she was somewhat more motivated towards her self-care tasks (Exhibit 9F/6). Overall, the record indicates that the claimant attends regular mental health appointments with continuing and consistent complaints of depression and fear of manic episodes; however, these treatment notes do not contain full objective mental status examinations of the claimant (Exhibits 2F, 3F, 6F, 7F, and 9F).

In March 2022, the claimant attended a psychological consultative evaluation with Dr. Fleischman (Exhibit 5F). At this time, the claimant reported a remote history of one inpatient psychiatric hospitalization (Exhibit 5F/2). She also reported participating in regular outpatient therapy (Exhibit 5F/2). The claimant complained of experiencing depression (Exhibit 5F/3). She also reported experiencing occasional

panic attacks (Exhibit 5F/3). The claimant noted that she has issues maintaining her hygiene, experiences fatigue, and has a general lack of motivation (Exhibit 5F/3). She noted that she has occasional manic episodes which caused her to experience delusions, obsessions, and sleep difficulty (Exhibit 5F/3). She also reported some trouble with her memory and concentration (Exhibit 5F/3). On mental status examination, the claimant was cooperative and her manner of relating was adequate (Exhibit 5F/3). She was dressed appropriately and presented as well groomed (Exhibit 5F/3). Eye contact was appropriate, and expressive and receptive language skills were adequate (Exhibit 5F/3). Thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia (Exhibit 5F/3). The claimant's mood was dysthymic and her affect was dysphoric (Exhibit 5F/3-4). She was alert and oriented (Exhibit 5F/4). Attention and concentration were impaired due to emotional distress secondary to bipolar disorder (Exhibit 5F/4). The claimant was able to count and complete simple calculations (Exhibit 5F/4). She was unable to perform serial sevens but was able to perform serial threes (Exhibit 5F/4). Recent and remote memory skills were impaired due to emotional distress secondary to depression (Exhibit 5F/4). The claimant was able to remember three out of three objects immediately, and two objects after a delay (Exhibit 5F/4). Intellectual functioning appeared to be in the average range with a general fund of information appropriate to experience (Exhibit 5F/4). Insight and judgment were good (Exhibit 5F/4).

Overall, in consideration of all the evidence of record, including the claimant's continuing subjective complaints and the findings from objective mental status examinations, the undersigned finds that the claimant would have no more than mild to moderate limitations under the paragraph B criteria, and finds that the claimant would be capable of performing unskilled work within the above parameters. In addition, the undersigned has fully accommodated the claimant's moderate impairment with interacting with others by limiting her to no more than frequent interaction with supervisors and coworkers, and no more than occasional interaction with the public. The undersigned has also fully accommodated the claimant's moderate impairment with concentration, persistence, or maintaining pace by limiting her to no

more than simple, routine, repetitive tasks, and further providing that she not perform tasks in a fast-paced production environment. Although the record supports no more than a mild limitation with adapting or managing oneself, the undersigned has nevertheless fully accommodated this limitation by providing that the claimant have no more than simple work-related decisions and limited her to relatively few workplace changes. In consideration of all the evidence of record, including the claimant's generally conservative treatment history, her subjective complaints at appointments, and the objective observations from the consultative evaluation, the undersigned finds that the claimant retains the capacity to perform unskilled work within the above parameters on a regular and continuing basis, and notes that the record does not support finding that the claimant would have any marked or extreme limitations under the paragraph B criteria.

(Tr. 36-37).

The ALJ also expressly considered the consultative examining opinion of Dr.

Fleischman in formulating this RFC stating that:

Dr. Fleischman opined that the claimant would have a mild limitation with understanding, remembering, and carrying out simple instructions, and making judgments on simple workrelated decisions (Exhibit 5F/6). She further opined that the claimant would have a moderate limitation with her ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions (Exhibit 5F/6). She indicated that the claimant would have a moderate limitation with her ability to interact with others and respond appropriately to usual work situations and to changes in a routine work setting (Exhibit 5F/7). Overall, the undersigned finds this opinion persuasive, as it is supported by the overall medical evidence of record, including the claimant's history of mental health treatment and the findings from objective examinations, including the findings that the claimant generally presented as alert and oriented, had normal memory, and had a normal mood and normal behavior, as noted above. This opinion is also consistent with the findings from the consultative evaluation, including the findings that the claimant had a dysthymic

11

mood and dysphoric affect, had some impairment with attention and concentration but was able to complete simple calculations and perform serial threes, had some impairment with memory but was able to remember three out of three objects immediately and two objects after a delay, had average intellectual functioning, had no abnormal thought processes, and had good insight and judgment, as noted above. In consideration of all the evidence of record, including the combination of the claimant's impairments and her testimony at the hearing, and in consideration of the objective examination findings discussed above, the undersigned finds that the claimant retains the capacity to perform unskilled work subject to the additional mental functional limitations included above.

(Tr. 38).

Finally, the ALJ considered a second expert opinion from a state agency expert, Dr. Murphy, who:

> [F]ound no limitation with understanding, remembering, or applying information, a mild limitation with interacting with others, a moderate limitation with concentration, persistence, or maintaining pace, and a mild limitation with adapting or managing oneself (Exhibit 3A/3). He opined that the claimant would be able to perform simple tasks, and could engage in simple, repetitive activities on a sustained basis (Exhibit 3A/4-5).

(Tr. 38). The ALJ found this opinion to be "generally persuasive, as it is supported by and consistent with the overall medical evidence of record, including the claimant's history of mental health treatment and the findings from objective examinations." (Id.)

Based upon this RFC determination, the ALJ concluded that Roecker could not return to her past work, but could perform the duties of a janitor/cleaner, laundry

worker, or vehicle cleaner. (Tr. 41). These three jobs had specific vocational preparation (SVP) levels of 1 or 2. <u>See</u> Dictionary of Occupational Titles (DOT) 381.687-018 Cleaner, Industrial, DICOT 381.687-018 (SVP level 2); 361.684-014 Laundry Worker I, DICOT 361.684-014 (SVP level 2); 919.687-014 Cleaner II, DICOT 919.687-014 (SVP level 1). In terms of their intellectual requirements, these were three forgiving standards for work. The intellectual requirements for these SVP 1 and 2 positions are modest and simply require the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," <u>Id.</u>

Based upon these findings the ALJ concluded that Roecker had not met the exacting disability standards prescribed by law and denied this claim. (Tr. 41). This appeal followed. (Doc. 1). On appeal Roecker advances a single claim, arguing that the RFC determination made by the ALJ was flawed in that it failed to fully incorporate Dr. Fleischman's findings. Roecker also argues that there is an inherent conflict between the simple tasks RFC formulated by the ALJ and tasks which have specific vocational preparation (SVP) levels of 2. (Doc. 16). This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

### III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable

16

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ
particular "magic" words: "Burnett does not require the ALJ to use
particular language or adhere to a particular format in conducting his
analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of
the ALJ's decision under a deferential standard of review, but we must also give that
decision careful scrutiny to ensure that the rationale for the ALJ's actions is
sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim
made here, based upon alleged inadequacies in the articulation of a claimant's
mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the
United States Court of Appeals recently addressed the standards of articulation that
apply in this setting. In Hess the court of appeals considered the question of whether
an RFC which limited a claimant to simple tasks adequately addressed moderate
limitations on concentration, persistence, and pace. In addressing the plaintiff's
argument that the language used by the ALJ to describe the claimant's mental
limitations was legally insufficient, the court of appeals rejected a *per se* rule which
would require the ALJ to adhere to a particular format in conducting this analysis.
Instead, framing this issue as a question of adequate articulation of the ALJ's

rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

This is a disabled widow's disability claim. Once the threshold requirements are met to satisfy widow status, to receive benefits by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age,

education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).  In  making  this assessment,  the  ALJ  considers  all  of  the  claimant's  medically  determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with the claimant's age, education, work, experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

20

ALJ adequately explain the legal and factual basis for this disability determination.
Thus, in order to facilitate review of the decision under the substantial evidence
standard, the ALJ's decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d
Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate
which evidence was accepted, which evidence was rejected, and the reasons for
rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in
his decision which evidence he has rejected and which he is relying on as the basis
for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir.
1999).

### C.     The ALJ's Decision in this Case is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our
independent assessment of the evidence for the ALJ's determinations. Rather, we
must simply ascertain whether the ALJ's decision is supported by substantial
evidence, a quantum of proof which is less than a preponderance of the evidence but
more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and
"does not mean a large or considerable amount of evidence," Pierce v. Underwood,
487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion.' "

<u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019). We also acknowledge that an ALJ's mental RFC assessment does not have to follow any particular format and should be upheld "as long as the ALJ offers a 'valid explanation,'" for that assessment. <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019).

Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's mental RFC assessment in this case. At the outset, Roecker argues that the ALJ's simple tasks RFC somehow irreconcilably conflicts with the job titles for the positions identified by the ALJ which had specific vocational preparation (SVP) levels of 2.

We disagree. Moreover, we note that we are not alone in our disagreement with the premise behind Roecker's argument; namely her argument that a simple tasks RFC is somehow incompatible SVP level 2 work. Quite the contrary, as the Third Circuit observed some twenty years ago:

> [T]he assumption that even a reasoning level of 2, where 1 is the lowest possible level of reasoning, is incompatible with the ALJ's decision in [the plaintiff's] RFC that her jobs must be simple [is incorrect] . . . . [E]ven level two only requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations." Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive.

<u>Money v. Barnhart</u>, 91 F. App'x 210, 215 (3d Cir. 2004) (footnotes omitted).

We are also constrained to observe that courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited the claimant to simple tasks and restricted the claimant's interaction with others. See, e.g., Smathers v. Saul, Case No. 18-1743, 2019 WL 5549340, at *9-10 (M.D. Pa. Sept. 30, 2019) (recommending affirmance of ALJ decision where SVP level 2 jobs were identified and claimant was limited to "'occasional interaction with coworkers and supervisors, but no interaction with public'"), adopted, 2019 WL 5550017 (M.D. Pa. Oct. 25, 2019); Davis v. Comm'r of Soc. Sec., No. 18-17126, 2019 WL 4686818, at *3 (D.N.J. Sept. 26, 2019) (affirming where ALJ found claimant not disabled for a period in which claimant was capable of "simple, routine, repetitive tasks that have a skill level of SVP 2" and "occasional interaction with supervisors and coworkers"); Romanoskey v. Berryhill, No. 16-2540, 2018 WL 1976472, at *8 (M.D. Pa. Mar. 27, 2018) ("The ALJ included in the hypothetical question the vocational limitations as unskilled, light work with [among other things] . . . an SVP of 2 or below; no interaction with the public; and no more than occasional interaction with supervisors or coworkers. . . . This was an entirely appropriate hypothetical question as it included all of Romanoskey's limitations as supported by the record"), adopted, 2018 WL 1967306 (M.D. Pa. Apr. 26, 2018); Gardner v. Comm'r of Soc. Sec., No. 16-4567, 2017 WL

4316877, at *5-7 (D.N.J. Sept. 28, 2017) (unskilled jobs compatible with limitation to "'occasional interaction with coworkers and supervisors, and no interaction with members of the public'"). Therefore, this claim fails.

Further, Roecker's broader challenge to this decision based upon alleged inconsistencies between Dr. Fleischman's opinion, which found only mild to moderate impairments, and this simple tasks RFC also fails when it is viewed through the pragmatic analytical lens prescribed by the Court of Appeals in Hess. In our view, Hess controls here and enjoins us to address the plaintiff's ability to undertake the mental demands of the workplace in the specific factual context of this case. Further, applying this fact-bound approach, we are instructed that a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

Here, the ALJ provided a valid explanation for this RFC, which limited Roecker to work which entailed simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work-place changes. The restrictions imposed by the ALJ were consistent with the ALJ's Step 3 determinations none of which are challenged in this appeal. Further, when read in a commonsense fashion, this RFC is fully supported by the evidence relating to Roecker's treatment history and reported activities of daily living. Moreover, Dr. Fleischman's opinion is largely

congruent with the other expert opinion that the ALJ found to be persuasive, the opinion of the state agency expert, Dr. Murphy. Therefore, when viewed through the pragmatic and holistic lens mandated by the court of appeals in Hess this argument fails.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law, was adequately articulated, and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, this decision will be affirmed.

**IV.   <u>Conclusion</u>**

For the foregoing reasons, the decision of the Commissioner in this case will

be affirmed and the plaintiff's appeal denied.

An appropriate order follows.

*/S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: July 9th 2024